## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| LINDA LEA GANT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:07-CV-0638-KOB |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OPINION

### I. Introduction

The claimant, Linda Lea Gant, filed an application for a period of disability and Disability Insurance Benefits on March 3, 2005 alleging disability commencing on February 15, 2005. The Commissioner denied the claims. The claimant filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on October 24, 2006. In a decision dated January 3, 2007, the ALJ found that the claimant was not disabled within the meaning of the Social Security Act, and, therefore, was not eligible for Disability Insurance Benefits and Supplemental Security Income benefits. On March 30, 2007, the Appeals Council denied the claimant's request for review. The claimant has exhausted her administrative remedies, and accordingly, this court has jurisdiction under 42 U.S.C. §§ 405(g) and 1631(c)(3). For the reasons stated below, this court will REVERSE and REMAND the Commissioner's decision.

## II. Issues Presented

In this appeal, the claimant contends that the ALJ's decision is not supported by substantial evidence and cites the reasons for that contention. First, the claimant alleges that the ALJ failed to accord the proper weight to the opinions of treating and examining physicians. Second, the claimant argues that the ALJ did not properly apply the pain standard. Third, the claimant asserts that the ALJ posed an improper hypothetical to the VE. Fourth, the claimant contends that the ALJ erroneously stopped the sequential evaluation process at the fourth step.

## III. Legal Standard

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.
>
> To make this determination, the Commissioner employs a five-step, sequential evaluation process:
>
> (1)  Is the person presently employed?
> (2)  Is the person's impairment severe?
> (3)  Does the person's impairment meet or equal one of the specific impairments as set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the person unable to perform his or her former occupation?
> (5)  Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520,

416.920.

Absent a showing of good cause to the contrary, the Commissioner must accord substantial weight to the opinion of a treating physician. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th. Cir. 1998). The Commissioner must articulate specific reasons for failing to give the opinions of treating physicians controlling weight and those reasons must be supported by substantial evidence. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

When a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms, the Commissioner must apply a three-part "pain standard," which requires:

> (1) evidence of an underlying medical condition and either
> (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or
> (3) that the objectively determined medical condition is of such severity that it can be reasonably be expected to give rise to the alleged pain.

*Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

### IV. Standard of Review

The standard for reviewing the Commissioner's decision is limited.  This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if his factual conclusions are supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826

F.2d at 999.  The Commissioner's factual determinations, however, are not reviewed *de novo*, but are affirmed if supported by substantial evidence.  "Substantial evidence" is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999.  A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but the court must also view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ, *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

## V.  Facts

The claimant was born September 11, 1963 and was forty-three years of age at the time of the Commissioner's decision. (R.32, 440). Claimant has two years of college education.  (R. 106). Her past work experience includes employment as a clerk, office manager, and city letter carrier. (R. 100). Claimant testified that she had been disabled since June 15, 2005, and is unable to work because of back and knee problems and depression. (R. 440-41).

The record shows a treatment for depression starting in 1998. (R. 266). The medical records show the claimant visited Medical East in Huntsville on April 10, 2002[1] after a work related injury on April 2, 2002. (R. 133-34). The claimant was diagnosed with lumbar strain and myofascial pain. (R. 133). The medical records indicate that the claimant was told to continue working with some restrictions regarding stooping and lifting. (R. 133). Notes from a follow up

---

[1] This date is erroneously referred to as February 10, 2002 on one page of the record, as well as in the claimant's brief.

visit on April 23, 2002 show that the claimant was ready to return to full work duties, and that she denied pain at that time. (R. 124). On December 19, 2002, an MRI of the claimant's spine showed a diminished T2 signal at L4-5, compatible with dessication of the lumbar. (R. 340). Notes from December 30, 2002 indicate a herniated L4-5 disc without severe cord or nerve root impingement, and localized pain in the right hip area. (R. 338). The claimant saw Dr. Howard Miller, an orthopedic physician, on January 27, 2003, who noted a mild disc bulge at the L4-5 level, and aggravation of degenerative disc disease. (R. 152). Medical records from a February 14, 2003 HealthSouth visit show a diagnosis of disc degeneration. (R. 157). The claimant began seeing Dr. Larry Parker, an orthopedic physician, on March 11, 2003. (R. 365). The claimant was given a series of epidural steroid injections on April 4 and May 16, 2003, but continued to complain of pain. (R. 192, 209, 223). The record shows the claimant called Dr. Parker's office on July 11, 2003 requesting pain medication and work restrictions, and he referred her to Dr. Shaun Aggarwal, a pain management physician. (R. 363). The claimant began seeing Dr. Aggarwal, on July 21, 2003, at which point she was taking Lortab for pain. (R. 404). Injections of Lidocaine followed on November 5, 2003. (R. 395).

   The claimant underwent a right L4-5 lumbar microdiscectomy with Dr. Parker on January 9, 2004. (R. 223). On January 20, 2004, Dr. Aggarwal noted that she had significant improvement after her back surgery, although the improvement was followed by increased pain in March 4, 2004, and a prescription for Duragesic patches. (R. 381, 394). A general practice physician, Dr. C. Scott Williams, noted the claimant's depression and mood disorder on February 11, 2004. (R. 328). Dr. Aggarwal discontinued Lortab on April 26, 2004, and began the claimant on Percocet followed by Oxycontin on May 7, 2004. At another appointment with Dr. Williams on May 4,

2004, the claimant denied depression but said she was experiencing fatigue. (R. 325).

The claimant underwent a second microdiscectomy and lumbar interbody fusion with Dr. Parker on September 17, 2004. (R. 269). At an examination on October 28, 2004, the record shows "there appears to be partial nonfilling of the right L4 nerve root," but also stated that this finding was not definite. (R. 308). Dr. Parker also noted the appearance of possible recurrent disc protrusion. (R. 309). On December 1, 2004, Dr. Aggarwal noted that the claimant was recovering well from her second surgery, and that the claimant benefitted from the medicine. (R. 378). On November 8, 2004, Dr. Parker noted that the claimant had normal sensation, and good range of motion of the hips, knees, and ankles with no pain. (R. 358). At this time, the claimant was told that she could return to work with a six-week "20 pound lifting restriction with no continuous bending or stooping and a chance to sit down for 5 to 10 minutes every 30 minutes." (R. 358).

Dr. William Shergy, a rheumatologist, examined the claimant on May 10, 2004. (R. 245). He found underlying evidence of fibromyalgia, and told the claimant to continue seeing Dr. Aggarwal regarding pain medication. (R. 245). Dr. Parker filled out a work restriction form on January 24, 2005, stating that the claimant was limited to working a four-hour work day. (R. 434). By January 31, 2005, the claimant told Dr. Aggarwal that she was having good and bad days, and felt unable to perform her job duties, and was having significant pain despite the Oxycontin, Lorcet, and Soma pain prescriptions. (R. 377). The claimant called Dr. Parker's office on February 23, 2005, saying that she injured herself lifting a tub of mail, and was experiencing too much pain to work. (R. 356). Dr. Parker's office wrote a work excuse to keep the patient off of work until the next appointment in April. (R. 356). During the same phone call, the claimant mentioned speaking with Dr. Parker on her last visit regarding disability. (R. 356). At the April 4,

2005 appointment, the claimant complained of pain, although the examination showed normal sensation, with good range of motion, and no evidence of osteoarthritis. (R. 355). Dr. Parker told the claimant that surgery options were exhausted, and that she should maintain treatment with her pain physician. (R. 355). Dr. Parker noted that the claimant would remain out of work until her next appointment, which was planned to be in three months. (R. 355). The record does not show a follow up appointment.

On May 18, 2005 the claimant saw Dr. Thomas Tenbrunsel, a licensed psychologist, for a diagnostic interview and report on a referral by the Disability Determination Service. (R. 316, 318). Dr. Tenbrunsel diagnosed the claimant with major depressive disorder, panic disorder, and chronic pain. (R. 317). The claimant told Dr. Tenbrunsel she had stopped prior depression counseling, because she was unable to pay. (R. 317). He stated that she would benefit from being referred to a chronic pain treatment center. (R. 317-18). He opined that "there was no psychological reason that she would not be able to maintain employment; understand, remember, and carry out instructions; and respond appropriately to supervisors and co-workers. She will certainly have difficulty maintaining employment until her depression and anxiety are treated appropriately; and her chronic pain is managed more thoroughly." (R. 317-18).

On June 9, 2005, a Disability Determination Specialist, Renita Parker, ruled that the claimant was not disabled. The claimant saw Dr. John Higgenbotham, an orthopedic physician, for left knee pain on June 29, 2005. (R. 352). He stated that she was giving a "confusing picture of pain." (R. 349). At an appointment on December 21, 2005, Dr. Higgenbotham noted that the claimant still had the same leg symptoms, and that the MRI was negative, so the problem was either osteoarthritis or a combination of osteoarthritis and sciatica. (R. 349). On February 6, 2006,

the claimant told Dr. Aggarwal that she had continued benefits with the medication, although the record reflects more pain complaints at an April 24, 2006 appointment at which point she was started on Lidoderm patches, as well as the patient noting a benefit from hydrotherapy. (R. 374-75). On July 17, 2006, Dr. Aggarwal stated that the claimant still had both good and bad days. (R. 373).

In his decision, the ALJ stated that the claimant had not performed substantial gainful work since the alleged onset date of February 15, 2005 (R. 19). The ALJ found that the claimant was post lumber fusion at L4-5, and had degenerative disc disease, osteoarthritis, and a history of depression and panic disorder. (R. 19). The ALJ stated that these impairments were severe, but not severe enough to meet or medically equal one of the listed impairments in 20 C.F.R. pt. 404, subpart P, app. 1. (R. 20).

The ALJ determined that the claimant had the residual functional capacity ("RFC") to perform sedentary exertional work activities with a sit/stand option, with the claimant requiring the ability to sit or stand at least every 30 minutes. (R. 20-21). The ALJ decided that the claimant's "impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 21). The ALJ found that the medical evidence supported the conclusion that the claimant could perform work at a sedentary medical level. (R. 22). In reaching this conclusion, the ALJ relied on statements by the claimant's physicians, as well as the RFC reached by the State Disability Determination Services; the ALJ stated that "certain aspects of their opinions are in fact consistent with the residual functional capacity determined in this decision." (R. 22). The ALJ found the claimant's allegations of being unable to work were not

supported by the record as a whole. (R. 22). The ALJ held that the claimant had exaggerated her symptoms and limitations. The ALJ found that the January 20, 2005 discussion with Dr. Parker regarding disability cast doubt upon the reliability of the claimant's allegations, as it was prior to the disability onset date. Also, the ALJ found that the claimant's testimony that she was only eating sandwiches was inconsistent with a 20-25 lb. weight gain, and the ability to drive 50 miles to the hearing was inconsistent with the claimant's allegations that she could only sit for 10 minutes before having to lie down. (R. 22). The ALJ stated that both the lack of a medication for the claimant's depression, and the lack of psychiatric treatment after 2005 contradicted the claimant's claims of severe depression. (R. 22). The ALJ found that the claimant was capable of performing her past relevant work as a secretary as that job is generally performed, in addition to unskilled sedentary jobs available in the national economy. (R. 23).

During the claimant's hearing, the ALJ posed several hypothetical situations to the vocational expert ("VE") regarding whether jobs existed in the national economy for an individual with the claimant's age, education, and work history. (R. 451). The first hypothetical assumed that the individual could perform a full range of sedentary work, provided she could sit or stand approximately every 30 minutes, and assuming no greater than moderate restrictions in activities of daily living, social functioning, and concentration, persistence, or pace. (R. 451). The VE testified that such an individual could perform the job of secretary, although at a sedentary exertional level and not the light level that the claimant previously performed that job. (R. 452). The VE mentioned other unskilled jobs available at the sedentary level, such as order clerk, and charge account attendant. (R. 452). A second hypothetical assumed that the individual was moderately severely limited regarding concentration, persistence, and pace because of pain and

discomfort. (R. 453). In response to that hypothetical, the VE stated that those limitations would preclude unskilled, sedentary jobs. (R. 453). In addition, if a person had to take unscheduled work breaks, or miss more than two days of work a month, these requirements would preclude employment. (R. 453). At the claimant's attorney's questioning, the VE stated that a person limited to working four hours a day because of pain would be unable to perform full-time work. (R. 454).

## VI.  Discussion

### A.  Opinions of the Physicians

The claimant alleges that the ALJ should have accorded greater weight to the opinions of Drs. Parker and Tenbrunsel.  Eleventh Circuit case law is clear that the ALJ must give a treating physician's opinion substantial weight unless good cause can be shown to the contrary.  *See e.g., Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Where medical evidence does not conclusively counter the treating physician's opinion, and no other good cause is presented, the ALJ cannot discount that opinion. *Schnorr v. Bowen*, 816 F.2d 578 (11th Cir. 1986). If the ALJ decides to discount the opinion of the treating physician, he must clearly articulate his reasons for doing so. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). The ALJ must state with particularity the weight given different medical opinions and the reasons for the differing weight, and failure to do so is reversible error. *Sharfaz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).

The claimant asserts that the ALJ's opinion is inconsistent with that of her treating physician, citing Dr. Parker's opinion that she would be limited to a four-hour work day as evidence of disability, and the VE's testimony that a four-hour work day restriction would preclude full time work. Dr. Parker's January 24, 2005 records do indeed reflect a four-hour per day work restriction. While under this restriction, the claimant suffered an injury, and called Dr.

Parker on February 23, 2005 after that injury, requesting a work excuse until her next appointment. (R. 356). Further, when Dr. Parker saw the claimant for her next appointment on April 4, 2005, he opined that she was unable to work at that time. (R. 355). Since Dr. Parker's April 4, 2005 opinion, no doctor has indicated that the claimant's condition has improved, and that she was able to work more than four hours. In fact, the medical records available do indicate that she continued to experience pain and to see Dr. Aggarwal for pain management.

The ALJ's finding of disability is not consistent with Dr. Parker's April, 2005 opinion that the claimant should be on full work restriction, or the four-hour per day work restriction that the claimant was under on her onset date of disability. The ALJ stated that "certain aspects of [Drs. Parker and Tenbrunsel's] opinions are in fact consistent with the residual functional capacity determined in this decision." (R. 22). But he did not fully explain which aspects of the opinion he was crediting, and which aspects he was rejecting. Dr. Parker's opinion did assume that he would see the claimant for another check up, and she did not return for a follow up. Yet, as noted previously, the court has no subsequent doctor records that show a change in her condition. The ALJ may not discredit a treating physician's opinion that supports a finding of disabled without stating explicit and adequate reasons. *Phillips*, 357 F.3d at 1241. As Dr. Parker's opinion supported a finding of disability, the ALJ should have explicitly discredited his opinion in the decision, stating adequate reasons for doing so. As he failed to do so, substantial evidence does not support the ALJ's decision.

The claimant further alleges that the ALJ did not give Dr. Tenbrunsel proper weight as an examining physician. Because Dr. Tenbrunsel's diagnosed her as suffering from severe depression, the claimant would be disabled within the meaning of the SSA. The ALJ

acknowledged Dr. Tenbrunsel's diagnosis, but found that it was only a temporary diagnosis, contingent on treatment of her pain. He focused on the following language: "there was no psychological reason that she would not be able to maintain employment; understand, remember, and carry out instructions; and respond appropriately to supervisors and co-workers. She will certainly have difficulty maintaining employment until her depression and anxiety are treated appropriately; and her chronic pain is managed more thoroughly." (R. 317-18). The ALJ found that the claimant's pain physician, Dr. Aggarwal, had dealt with her pain, lessening the claimant's psychological impairment.

The ALJ's finding is not consistent with the medical record. While the ALJ found Dr. Aggarwal had managed the claimant's pain, the claimant had seen Dr. Aggarwal since 2003, and continued to complain of severe pain through 2006, which is after the 2005 visit with Dr. Tenbrunsel. Dr. Aggarwal was continuously adjusting the pain medications, and starting the claimant on different medications, providing objective medical support that Dr. Aggarwal believed the claimant's complaints were genuine. Also, Dr. Tenbrunsel stated that the claimant's improvement was contingent on treatment for depression and anxiety--treatments the claimant has not received according to the record because of her inability to pay. The ALJ ignored the conditional nature of Dr. Tenbrunsel's opinion that she would be able to work. The ALJ may not arbitrarily choose to ignore uncontroverted medical testimony. *Goodley v. Harris*, 608 F.2d 234, 236 (5th Cir. 1979). As the ALJ in this case ignored Dr. Tenbrunsel's diagnosis of severe depression, this court finds that he erred.

The ALJ cited the lack of medication for the claimant's psychiatric problems, and the lack of psychiatric treatment after 2005 as evidence against severe depression. (R. 19, 22). However,

the ALJ cannot hold failure to follow medical treatment against the claimant who is unable to pay for that treatment. *Dawkins v. Bowen*, 848 F.2d 1211, 1213-14 (11th Cir. 1988). The claimant told Dr. Tenbrunsel that the she had stopped seeing a counselor for depression after 2005 because of her financial status; the ALJ may not hold the lack of treatment as evidence that she is not suffering from depression. (R. 317).

A further reason the ALJ used in contradicting the claimant's assertion of severe depression was the DDS report by a *non-examining non-physician*. (R. 22). The ALJ can rely on a report if it does not contradict information in the examining physicians' reports. *See Edwards v. Sullivan*, 937 F.2d at 585 (finding the ALJ properly relied on non-examining physician's report as it was not contradicted by the examining physicians' reports). As Dr. Tenbrunsel's diagnosis conflicts with the DDS report, the ALJ improperly relied on the DDS report in reaching his decision. As the ALJ failed to explain his reasons for discrediting the opinions of the claimant's treating and examining physicians, the ALJ erred in not relying on these opinions in making a disability determination.

### B. Application of the Pain Standard

The claimant's next allegation is that the ALJ failed to properly apply the pain standard in determining that she was not entitled to benefits. The three-part pain standard applies when the claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. *See Holt v. Sullivan*, 921 F.2d at 1223. When a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms, the ALJ applies a three-part "pain standard," which requires evidence of an underlying medical condition and <u>either</u> objective medical evidence that confirms the severity of the alleged pain arising from that

condition or that the objectively determined medical condition is of such severity that it can be reasonably be expected to give rise to the alleged pain. *Foote v. Chater*, 67 F.3d at 1560.

The claimant argues that her multiple surgeries support her complaints of pain. The claimant underwent two microdiscectomies, after which a partial nonfilling of the right L4 nerve root occurred. The claimant also appeared to have possible recurrent disc protrusion. The claimant sees a pain specialist who has prescribed multiple variations of pain medications. Most recently, the pain specialist prescribed Soma, Lorcet, and Oxycontin. These diagnoses and continual treatments represent objective medical evidence confirming the severity of her pain.

In February 2005, the claimant injured herself, and Dr. Parker's office restricted her from any work. After an April 2005 examination, Dr. Parker continued the full work restriction. In the decision, the ALJ found the reports of improvement and benefits from pain medication conflicted with the claimant's statements. Following the second microdiscectomy, records do indeed reflect that the claimant had good range of motion and no pain, and she was told to begin working again. Later examinations showed normal sensation, good range of motion, and no osteoarthritis. Dr. Aggarwal's records show a pattern of fluctuating pain, with both good and bad days. At February and April 2006 appointments, the claimant noted a benefit from the medication and hydrotherapy. However, later reports by the same doctors show that the claimant was in continued pain and had re-injured herself. On the same April 24, 2006 appointment that the claimant noted a benefit from hydrotherapy, she was started on Lidoderm patches, showing continued pain problems. As the record shows that the surgeries were not successful in controlling the claimant's pain, substantial evidence does not support the ALJ's finding.

The claimant also argues that the discussion she had with Dr. Parker regarding disability

prior to the February 15, 2005 work injury is not good cause to question the claimant's reliability. The claimant's surgeries had occurred prior to the 2005 injury, and the medical record shows complaints of pain prior to that date. At a January 31, 2005 appointment she told Dr. Aggarwal that she felt unable to continue working. At the time of the January 2005 discussion with Dr. Parker, the claimant was already under a four-hour-per-day-work restriction, and the VE testified that a person under this restriction would be unable to work. The ALJ found that the discussion with Dr. Parker regarding disability was a good reason to question the reliability of the claimant's subjective complaints, as it occurred prior to the February 2005 injury. However, the February 2005 injury was not the cause of the claimant's back problems, only an aggravating factor. As the record shows that the claimant had objective medical record of injuries and pain complaints prior to the January 2005 disability discussion with Dr. Parker, the January discussion does not constitute substantial evidence to discredit the claimant.

Further, the claimant argues that the ALJ should not have used her daily activities as discrediting evidence. The claimant testified that she spent 22 hours a day lying down, and performed no housework. The ALJ found these daily activities and her complaints of pain to be inconsistent with living alone and driving fifty miles to the hearing. (R. 22). As the claimant argues, activities of a short duration do not constitute substantial evidence to reject a claimant's credibility. *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997). An activity which only occurred on one day for no more than a few hours cannot be used as evidence of lack of disability[2].

---

[2]The court finds particularly troubling the ALJ's use of the claimant's attendance at the hearing against her. Had she failed to appear, would he have found otherwise?

The claimant also argues against her purported weight gain being inconsistent with her testimony. At the time of the hearing, the claimant testified that she weighed 135 lbs, and that she had gained 20 to 25 lbs. since she had been unable to work. (R. 442). The ALJ found the weight gain to be incredible, as the claimant testified that she only eats sandwiches. (R. 22). This determination is not supported by substantial evidence, as the ALJ did not know the caloric content of those sandwiches, and cannot find weight gain from eating them incredible. Also, the weight gain is consistent with the claimant's testimony that she lies down 22 hours a day, in contrast to her formerly active job with the post office. Again, substantial evidence does not support the ALJ's reason for discrediting the claimant's testimony[3].

When assessing a claimant's subjective complaints of pain, the ALJ must state explicit and adequate reasons for not crediting a claimant's testimony. *See Holt v. Sullivan*, 921 F.2d at 1223. As the claimant's complaints are consistent with the record, the ALJ's reasons for discrediting the claimant's testimony are not adequate, which is reversible error. As substantial evidence does not support the reasons the ALJ listed in finding the claimant non-credible, the ALJ erred in rejecting the claimant's subjective pain complaints.

**C. Issues III and IV**

As the prior issues on appeal have merit, the court need not address the third and fourth issues. However, the VE stated that an individual restricted to working four hours a day, Dr. Parker's opinion as of the disability onset date, would be unable to work competitively. As the ALJ failed to discredit Dr. Parker, the ALJ should have relied upon the four-hour-per-day

---

[3] In the claimant's brief, the claimant discusses the lack of psychiatric treatment and the DDS report under the discussion of the pain standard. As those two topics pertain to the physicians' opinions, they are discussed under that issue.

hypothetical when reaching a decision.

## VII. Conclusion

Based on the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the ALJ failed to show good cause for rejecting the opinions of the claimant's physicians, as well as the claimant's own testimony. Accordingly, substantial evidence does not support his decision. Therefore, the court will REVERSE the Commissioner's decision and REMAND it for the ALJ to determine whether the claimant is entitled to Disability Insurance Benefits.

The court will enter a separate Order in conformity with this memorandum opinion.

DATED this 13th day of August, 2008.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE